Robert Henry BIVINS *v.* STATE of Arkansas

CR 85-30                                    691 S.W.2d 847

Supreme Court of Arkansas
Opinion delivered June 24, 1985

*William R. Simpson, Jr.,* Public Defender, and *Arthur L. Allen,* Deputy Public Defender, by: *Deborah R. Sallings,* Deputy Public Defender, for appellant.

*Steve Clark,* Att'y Gen., by: *Connie C. Griffin,* Asst. Att'y Gen., for appellee.

GEORGE ROSE SMITH, Justice. The appellant Bivins was convicted of burglary and attempted rape and was sentenced to consecutive terms of 20 and 30 years. The length of the sentence brings the case to this court under Rule 29(1)(b). The only argument for reversal is that the court erroneously allowed the prosecutor to refer in his closing argument to the defendant's post-arrest silence. The argument is without merit.

On March 4, 1984, the prosecutrix was living with her children in a mobile home next to another one occupied by Michael Nix and his wife. Bivins is Michael's cousin and was spending that night at the Nix home. The prosecutrix testified that at about 4:30 a.m. she awoke to find a man lying on top of her and kissing her. She began screaming and ran to the Nixes' home for help. The sheriff was called; his deputies arrived within a few minutes. They searched the area before learning that Bivins, whom the prosecutrix knew by sight, was next door. A deputy then got Bivins out of bed and took him to the prosecutrix, who identified him as her assailant. Other than that, the record contains no testimony about the arrest or about Bivins's interrogation by the police, if in fact he was interrogated. Mrs. Nix brought Bivins's wet, dirty socks to the officers. An expert witness testified that the soil on the socks matched a sample taken from near the prosecutrix's home, but the comparison was not positive enough to be conclusive.

Bivins himself was the only defense witness. He denied that he had been in the prosecutrix's mobile home at all. He said he and the Nixes spent the evening at a club which closed at midnight. Bivins had too much to drink. When the three got back to the Nix mobile home, Bivins stayed up a little later than the others, watching television. Before going to bed he felt sick and went outside to throw up, not wanting to mess up the trailer. Defense counsel brought out on direct examination that Bivins was wearing only his britches and socks when he went outside. On cross examination the following occurred, without objection:

> Q. I guess you didn't tell anybody that you went out there and throwed up, did you?
>
> A. Wasn't no sense in it.
>
> Q. Even later?
>
> A. No, sir.

The argument for reversal is based on this incident during the prosecutor's closing argument, as to which the record contains only the following excerpt and nothing more:

> Prosecutor: [Mr. Bivins] heard the testimony today about the socks, and all of a sudden it became important

that he get those socks wet and get them dirty outside. So, that's when we come up with the story about throwing up, a story that he never had told anybody else before. It's because he's not sitting back there in that room. He can hear what everybody else says and get his story straight.

Defense Counsel: Excuse me. Your Honor, I'm going to have to object to that, Mr. King's last remark about whether or not Mr. Bivins has told anyone about this. And I'm prepared to offer testimony about whether or not if Mr. King implies this is some recent fabrication made up here today.

The Court: Gentlemen, this is merely argument. We have received all the evidence and the jury can disregard it. They heard the testimony.

Assuming, without deciding, that defense counsel obtained an adverse ruling upon his objection, there was no error. Here the appellant relies on the Supreme Court's ruling in *Doyle* v. *Ohio*, 426 U.S. 610 (1976), which we followed in *Thompson* v. *State*, 284 Ark. 403, 682 S.W.2d 742 (1985). Those cases, however, are significantly different from this one.

In both *Doyle* and *Thompson* the accused had been given the *Miranda* warning when arrested. In neither case did the accused make a statement to the police. At both trials the accused came forward on direct examination with a plausible explanation of his or her conduct at the time of the offense. In both cases, *over timely objection*, the prosecutor was permitted to question the accused in detail about why he or she had not given the same explanation to the police while being interrogated. The Supreme Court held that the prosecutor's tactics were so unfair as to deny due process. We quote the essence of the Supreme Court's reasoning:

> The warnings mandated by the *Miranda* decision . . . require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. . . . Moreover, while it is true that the *Miranda* warnings contain no express assurance that

silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it is fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. . . .

We hold that the use for impeachment purposes of petitioner's silence, *at the time of arrest and after receiving the Miranda warnings*, violated the Due Process Clause of the Fourteenth Amendment. [Our italics.]

In the case at bar the situation is wholly different. Here no *Miranda* warnings are shown. No police interrogation is even suggested. Almost all the pertinent facts were voluntarily brought out on direct examination. On cross-examination there was no unfair hounding of Bivins about why he had not told his story to the police, as there was in *Doyle* and *Thompson*. Most important, there was no objection to the prosecutor's two questions bringing out the fact that Bivins had not told his story to anyone else. Since the testimony was before the jury, the prosecutor had a right to refer to it in his closing argument. *Yancy v. State*, 120 Ark. 350, 179 S.W. 352 (1915); *Gordon v. Town of DeWitt*, 106 Ark. 283, 153 S.W. 807 (1913); Hall, *The Bounds of Prosecutorial Summation in Arkansas*, 28 Ark. L. Rev. 55, 66 (1974).

Affirmed.